IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| FISH FARMS PARTNERSHIP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:09-CV-163 |
| ) | |
| WINSTON-WEAVER CO. INC., and ) | |
| CROP PRODUCTION SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In response to plaintiff's first amended complaint, defendant Crop Production Services, Inc. ("CPS") has filed a partial motion for judgment on the pleadings. The motion has been fully briefed and is ripe for the court's consideration. Oral argument is unnecessary. For the reasons that follow, CPS's motion will be granted in part and denied in part.

I.

*Background*[1]

Plaintiff "is one of the most successful commercial tomato farmers in the State of Tennessee." For approximately 15 years, UAP Distribution, Inc. ("UAP") sold fertilizer to plaintiff. UAP and CPS merged in 2009.[2]

---

[1] The court's factual recitation is taken from plaintiff's first amended complaint.

[2] UAP and CPS will be hereinafter collectively referred to as "CPS."

In early 2008, plaintiff placed an order with CPS for the fertilizer "Winston-Weaver 06-10-12," as it had done for many years. The defendants represented that the fertilizer contained a precise makeup of 6% nitrogen, 10% phosphorus, and 12% potassium. Defendant Winston-Weaver Co., Inc. manufactured the fertilizer under license from CPS. As noted, CPS was also the seller of the product.

Plaintiff applied the fertilizer to approximately 450 acres of tomato plants. Those plants subsequently "produc[ed] substantially less fruit than expected." Plaintiff claims that the fertilizer contained 60% excess nitrogen, causing inordinate vegetation growth and reduced fruit production.

By its first amended complaint, plaintiff seeks more than $2,000,000.00 in compensatory damages for "production losses" resulting from its "ruined crop." CPS now asks the court to dismiss, in whole or in part, eight of the eleven counts contained in that pleading.

II.

*Applicable Legal Standards*

Motions for judgment on the pleadings are authorized by Rule 12(c) of the Federal Rules of Civil Procedure. Courts analyze Rule 12(c) motions by employing the same standard applied to those filed under Rule 12(b)(6). *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("*PONI*") (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). The court "must construe

the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Hog Market*, 249 F.3d at 512. The court need not, however, accept legal conclusions presented in the complaint, nor should it make unwarranted factual inferences. *See PONI*, 399 F.3d at 697 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To survive a Rule 12(b)(6) motion, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

III.

*Analysis*

A. Magnuson-Moss Warranty Act

Count three of the first amended complaint alleges violation of the Magnuson-Moss Warranty Act ("MMWA"). CPS argues that this claim should be dismissed because the MMWA applies only to "consumer products." According to CPS, the subject fertilizer

is not a "consumer product" because it was used for commercial purposes. That theory is incorrect.

Under the MMWA, a "consumer product" can be "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. § 2301(1).

> [A] product is a "consumer product" if the use of that type of product is not uncommon. The percentage of sales *or the use to which a product is put by any individual buyer is not determinative*. For example, products such as automobiles and typewriters which are used for both personal and commercial purposes come within the definition of consumer product. Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage.
>
> . . . [T]hose agricultural products normally used for personal or household gardening (for example, to produce goods for personal consumption, and not for resale) are consumer products under the Act.

16 C.F.R. § 700.1(a)-(b) (emphasis added).

It is not uncommon for fertilizer to be used for "personal, family, or household purposes." Plaintiff's commercial use of fertilizer is irrelevant. *See id.* CPS's request to dismiss count three will be denied.

B. Breach of Contract

Count one of the first amended complaint alleges breach of contract. CPS argues that this claim is barred by section 29-28-106(a) of the Tennessee Code, which provides in material part,

4

> No "product liability action" [including for breach of contract] . . . shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition.

Tenn. Code Ann. § 29-28-106(a); *see also* Tenn. Code Ann. § 29-28-102(6) (defining "product liability action").

Accepting the factual allegations of the first amended complaint as true, the court will not dismiss the breach of contract claim at this time. Plaintiff has pled that defendant Winston-Weaver did not have sufficient quality control measures in place to prevent a substantial formula variation. Plaintiff has further pled that CPS, as owner and licensor of the formula for "Winston-Weaver 06-10-12," was reasonably in a position to know about that issue. At this early stage of the litigation, plaintiff has sufficiently pled that CPS was "afforded [the] reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition." Tenn. Code Ann. § 29-28-106(a). CPS's request to dismiss count one will therefore be denied.

C. Tennessee Consumer Protection Act

Count nine of the first amended complaint alleges violation of the Tennessee Consumer Protection Act ("TCPA"). CPS asks the court to dismiss count nine to the extent

that plaintiff would seek treble damages. CPS contends that plaintiff has not sufficiently pled a "willful or knowing violation" of the TCPA as is necessary to support an award of treble damages.

Under the TCPA, "If the court finds that the use or employment of the unfair or deceptive act or practice was *a willful or knowing violation* of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper." Tenn. Code Ann. § 47-18-109(3) (emphasis added). In turn, "knowing" is defined under the statute as "actual awareness of the falsity or deception, but actual awareness may be inferred where objective manifestations indicate that a reasonable person would have known or would have had reason to know of the falsity or deception." Tenn. Code Ann. § 47-18-103(6).

For the reasoning employed in the prior section of this opinion, CPS's request will be denied. Plaintiff has pled that defendant Winston-Weaver did not have sufficient quality control measures in place and that CPS, as owner and licensor of the fertilizer formula, would have known or would have had reason to know of that problem. At this early stage, plaintiff has sufficiently pled a claim for treble damages under the TCPA.

### D. Tort Claims

Lastly, CPS argues that the first amended complaint's five tort claims should be dismissed under Tennessee's economic loss doctrine. Those claims are count six (negligent misrepresentation), count seven (intentional misrepresentation), count eight

6

(negligence), count ten (false advertising), and count eleven (strict liability in tort). CPS's argument is well-taken, and these five claims will be dismissed.

In *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128 (Tenn. 1995), the plaintiff tomato growers suffered crop damage due the defendant's allegedly defective product. The Supreme Court of Tennessee ruled that the plaintiffs' tort claim would be barred by the economic loss doctrine. "Tennessee has joined those jurisdictions which hold that product liability claims resulting in pure economic loss can be better resolved on theories other than negligence." *Id.* at 133. In addition to negligence, claims for misrepresentation or strict liability would also be inappropriate. *Id.* at 132-33. The *Ritter* court provided an illustration of the economic loss doctrine:

> A typical case is *Prairie Production*, in which a seed growing company sustained economic losses when a pesticide they purchased failed to control corn earworms as the label promised. The Court of Appeals affirmed the trial court's grant of summary judgment, holding that Article 2 of the Uniform Commercial Code "governs the economic relations between buyer and seller, and the dissatisfied buyer may avail himself of the remedies fashioned by the legislature."

*Id.* at 133, *citing and quoting Prairie Prod. v. Agchem Div.-Pennwalt*, 514 N.E.2d 1299, 1304-05 (Ind. Ct. App. 1987).

The similarities between *Ritter*, *Prairie Production*, and the instant case are obvious. Nonetheless, plaintiff argues that its tort claims should survive. The *Ritter* court speculated that the misrepresentation claim therein would not have been barred if the

7

plaintiffs had sued for "property damage" rather than "economic damages resulting from the lost profits." *Ritter*, 912 S.W.2d at 131-32. *Ritter* also noted that the distinction between "economic loss" and "injury to property" is not always clear, *id.* at 129 n.1, and, predictably, conflicting opinions have followed from the Court of Appeals of Tennessee regarding tort recovery in cases of damage to "other property." *See Messer Griesheim Indus. v. Cryotech of Kingsport*, 131 S.W.3d 457 (Tenn. Ct. App. 2003); *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159 (Tenn. Ct. App. 2002).

Citing *Messer*, plaintiff contends that its pleading of "irreparable property damage" at paragraph 33 of the first amended complaint renders the economic loss doctrine irrelevant in this case. The court disagrees and need not engage in a dissertation regarding *Ritter*, *Messer*, and *Trinity*. That is so because in deciding a Rule 12(c) motion the court need not credit conclusory statements such as plaintiff's plea of "irreparable property damage." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers labels and conclusions . . . will not do." *Id.* (quotation and citation omitted). The court need not accept legal conclusions presented in a complaint. *PONI*, 399 F.3d at 697.

At paragraph 32, the first amended complaint makes clear that the more than $2,000,000.00 in compensatory damages sought by plaintiff flow from "production losses." In other words, conclusory labels notwithstanding, plaintiff seeks damages for profits lost

8

from a diminished tomato harvest. The *Ritter* court made clear that the concept of "economic loss" encompasses lost profits. *Ritter*, 912 S.W.2d at 129 n.1. Discussion of damage to "other property" in the instant case is a mischaracterization of the damages actually at issue. *Ritter* and *Prairie Production* are squarely on-point. Under Tennessee law, a plaintiff cannot sue in tort for lost profits. CPS's motion will accordingly be granted as to plaintiff's tort claims.

IV.

*Conclusion*

For the reasons provided herein, counts six, seven, eight, ten, and eleven of the first amended complaint will be dismissed *as to defendant CPS*. The pending motion for judgment on the pleadings will be denied in all other respects. An order consistent with this opinion will be entered.

ENTER:

<span style="text-align:right">s/ Leon Jordan<br>United States District Judge</span>