IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

FISH FARMS PARTNERSHIP,             )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   No. 2:09-CV-163
                                    )
WINSTON-WEAVER CO. INC., and        )
CROP PRODUCTION SERVICES, INC.,     )
                                    )
        Defendants.                 )

**MEMORANDUM OPINION**

According to plaintiff's first amended complaint ("complaint"), "[t]his lawsuit seeks monetary damages for defective fertilizer which severely harmed tomato plants owned by Plaintiff, in turn damaging Plaintiff's commercial tomato farming business." [Doc. 27, ¶ 1]. The complaint contains eleven counts against defendants Winston-Weaver Co. Inc. ("Winston-Weaver") and Crop Production Services, Inc. ("CPS"). Six of those counts have been previously dismissed as to both defendants, and by stipulation entered October 19, 2012, defendant CPS was dismissed from this case entirely.

Now before the court is defendant Winston-Weaver's summary judgment motion regarding the remaining five counts of the complaint. The motion has been fully briefed and is ripe for the court's consideration. Oral argument is unnecessary. For the reasons that follow, the motion will be granted and this case will be dismissed.

## I.

*Background*

This lawsuit, filed in 2009, pertains to the 2008 growing season. In those years, plaintiff Fish Farms Partnership was a partnership composed of brothers Larry and Jimmy Fish. In August 2010, Larry Fish died. Winston-Weaver manufactured the fertilizer at issue, which was advertised and labeled as containing a precise makeup of 6% nitrogen, 10% phosphorus, and 12% potassium.

It has been plaintiff's position throughout this litigation that the fertilizer it order, received, and used in 2008 contained approximately 60% more nitrogen than it should have. According to the complaint, that deviation caused excessive vegetation growth and reduced fruit production in the 2008 tomato crop. [Doc. 27, ¶¶ 18, 29]. Plaintiff does not complain or argue that it suffered dying or dried-up plants caused by the fertilizer. Instead, plaintiff seeks more than $2,000,000.00 in compensatory damages for "production losses" resulting from its "ruined crop," based solely on the issue of excessive vegetation growth and reduced fruit production.

The trial of this matter is presently scheduled to commence on January 22, 2013. At trial, plaintiff intends to offer the expert testimony of Dr. Harry Mills to prove harm and causation. According to Dr. Mills' affidavit and deposition testimony, Larry Fish contacted him during the 2008 growing season (prior to May 28, 2008) "about his tomato crop that was producing excessive vegetative growth, and reduced flower and fruit set on the

2

plant." [Doc. 86, ex. 3, ¶ 5]. Dr. Mills states that he confirmed with Larry Fish that: (1) vegetative growth was excessive compared to previous years; (2) flowers were aborting; and (3) fruit development was reduced and of unmarketable quality. *Id.*

Dr. Mills never visited plaintiff's farm. [Doc. 84, ex. A, p. 21]. His subsequent testing and opinion addressed the only issues reported to him by Larry Fish - excessive vegetation growth and diminished fruit yield. *Id.* at 15, 213-14. According to Dr. Mills' deposition testimony, Larry Fish never complained to him of "dying plants as part of any discussion. It was the bush growth and the lack of flower production." *Id.* at 214-15.

Dr. Mills tested leaf tissue and a fertilizer sample sent to him by plaintiff. [Doc. 86, ex. 3, ¶¶ 6-8]. Dr. Mills concluded that the fertilizer contained over 50% more nitrogen than the labeled amount, and that the tissue samples showed "excessive nitrogen in the tomato leaf." [Doc. 86, ex. 3, ¶¶ 6-7, 9]. It is Dr. Mills' opinion "that there [is] zero doubt, within a reasonable degree of scientific certainty, that the excessive nitrogen in the fertilizer . . . was the cause of [the] excessive vegetative growth, flower abortion, and reduced fruit yield" reported to him by Larry Fish. [Doc. 86, ex. 3, ¶ 10].

II.

*Summary Judgment Standard*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law." Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically-stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The movant must first demonstrate that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries that initial burden of showing that there are no genuine issues of material fact in dispute, the non-moving party must then present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See id.* at 255. However, the court "cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion." *Knox v. Neaton Auto Prods. Mfg.*, 375 F.3d 451, 457 (6th Cir. 2004) (citation omitted). Instead, the court must determine whether the admissible evidence requires submission to a jury or whether the

movant must prevail as a matter of law because the issue is so one-sided. *See Liberty Lobby,* 477 U.S. at 251-52. "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).

III.

*Analysis*

The remaining counts of the complaint are: (1) breach of contract; (2) breach of express warranty; (3) violation of the Magnuson-Moss Warranty Act; (4) breach of warranty of fitness for a particular purpose; and (5) breach of implied warranty of merchantability. To succeed on any of these counts, plaintiff must show damages resulting from a harm caused by Winston-Weaver's allegedly defective fertilizer. In response to the pending summary judgment motion, plaintiff has failed to come forward with any admissible proof that it actually suffered the harm allegedly caused by the fertilizer. For this reason, summary judgment must be granted in Winston-Weaver's favor.

To be certain, Dr. Mills' affidavit and deposition testimony are evidence that high levels of nitrogen *can cause* excessive leafing and diminished fruit production in tomato plants. Dr. Mills' evidence, however, does not demonstrate a genuine issue for trial on the question of whether plaintiff's tomato crop *actually suffered* excessive leafing and diminished fruit production.

5

Dr. Mills did not visit plaintiff's farm. Dr. Mills bases his opinions on what Larry Fish told him - that "his tomato crop . . . was producing excessive vegetative growth, and reduced flower and fruit set on the plant." What Larry Fish told Dr. Mills is now being offered by plaintiff to establish the truth of the matter asserted - that plaintiff suffered the alleged harm. Winston-Weaver correctly points out that Larry Fish's statements, as relayed by Dr. Mills, are hearsay. *See* Fed. R. Evid. 801(c).

Plaintiff's response brief makes no mention of the hearsay issue, and thus offers no solution to the problem. *Cf. McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). As noted above, the court cannot rely on inadmissible hearsay when ruling on a summary judgment motion. *See Knox*, 375 F.3d at 457.

Under Rule 804(a)(4) of the Federal Rules of Evidence, Larry Fish is an "unavailable" witness due to his death. Rule 804(b) provides six circumstances in which an unavailable declarant's statement might not be excluded by the rule against hearsay. None of those exceptions apply in this case:

6

1. Larry Fish's statements are not prior sworn testimony. Fed. R. Evid. 804(b)(1).

2. Larry Fish's statements were not made under a belief of imminent death. Fed. R. Evid. 804(b)(2).

3. Larry Fish's statements were not made against his own interest. Fed. R. Evid. 804(b)(3).

4. Larry Fish's statements do not regard personal or family history such as birth, adoption, or marriage. Fed. R. Evid. 804(b)(4).

5. Larry Fish's statements, which as will be addressed below are contradicted by every other witness, do not bear the "circumstantial guarantees of trustworthiness" required by the residual hearsay exception. Fed. R. Evid. 804(b)(5), 807(a).

6. Winston-Weaver did not cause Larry Fish's unavailability. Fed. R. Evid. 804(b)(6).

Larry Fish's statements therefore cannot be used by plaintiff to establish a genuine issue for trial. Other than the Larry Fish hearsay offered through Dr. Mills, plaintiff presents no proof that its crops were harmed by defendants' fertilizer. Based on testimony cited by Winston-Weaver, and based on plaintiff's failure to address the issue, it is apparent that no admissible proof exists. It is again noted that plaintiff has made no effort to address the hearsay issue, and the issue is deemed waived.

Moreover, Larry Fish's partner, Jimmy Fish, who "look[ed] at all of Fish Farms' fields for evidence of problems in 2008," observed only that plants "back[ed] up and just died" within two weeks of planting due to burned roots. [Doc. 84, ex. B, p. 51, 56, 61]. Jimmy Fish saw no other problems. *Id.* at p. 61.

7

Dr. Allen Straw visited the Fish Farms fields weekly during 2008. [Doc. 84, ex. D, p. 32]. Dr. Straw saw some "dead or dying plants" and noted that the ground was "a little dry." *Id.* at 32, 61, 87. Dr. Straw did not observe tomato plants with excess foliage and diminished flowering. *Id.* at 87-88.

Bill Yarborough visited plaintiff's fields on June 3, 2008. [Doc. 84, ex. E, p. 9]. Mr. Yarborough observed only that 10% of the crop appeared to be dying due to overly dry soil. *Id.* at 14, 35, 39, 41, 47-48.

Chuck Francis visited plaintiff's fields at least once during the 2008 growing season. [Doc. 84, ex. F, p. 75]. Mr. Francis saw no plants with excessive vegetation. *Id.* at 76. Instead, the only problem he observed was dying plants in dry soil. *Id.* at 76, 84.

In sum, plaintiff offers no admissible evidence regarding an essential element of its case for which it bears the ultimate burden of proof at trial. While Dr. Mills' affidavit and deposition testimony raises a genuine issue of fact as to *causation* (that nitrogen can cause excess vegetation and diminished fruit), causation is irrelevant if plaintiff has no admissible proof *that it actually suffered that harm*.

From the *admissible* evidence cited by the parties, it appears that plaintiff's 2008 growing season was marred only by dying plants in dry soil. There is no proof that Winston-Weaver's fertilizer caused dying plants or dry soil, nor does plaintiff even make such an allegation.

## IV.

*Conclusion*

Plaintiff has failed to meet its burden of presenting admissible evidence demonstrating a genuine issue for trial on a foundational element of its claims - that it actually suffered the harm alleged. Summary judgment will therefore be granted in favor of defendant Winston-Weaver, and this civil action will be dismissed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>
United States District Judge